*384
 
 Zimmerman, J.
 

 The law reports are replete with cases in which patrons of mercantile establishments have been injured by slipping and falling on the floors or stairways of such establishments and have later instituted actions for damages against the owners or operators on the ground that such floors or stairways were negligently constructed or maintained. Cases of this type sometimes involve narrow distinctions and a decision in each case depends largely on the facts of the particular case.
 

 This court has considered and decided a number of such cases and has announced and adopted certain general rules to be applied in their disposition. It has been held that owners or operators of stores are not insurers against all accidents and injuries to their patrons, but owe the duty of ordinary care toward such patrons to keep the premises in a reasonably safe condition for the patrons’ protection. A store operator is not ordinarily liable to a patron who slips, fall's and is injured by reason of á wet and slippery condition of a floor caused by rain blowing into the front of the store and by other patrons dripping and tracking water onto the floor. It is not negligence per se to have an oiled floor in a store. If the floor dressing is applied and maintained in a proper manner, there is no liability to a patron who slips and falls on such floor. See
 
 S. S. Kresge Co.
 
 v.
 
 Fader,
 
 116 Ohio St., 718, 158 N. E., 174, 58 A. L. R., 132, and
 
 J. C. Penney Co., Inc.,
 
 v.
 
 Robison,
 
 128 Ohio St., 626, 193 N. E., 401, 100 A. L. R., 705. The doctrine of
 
 res ipsa loquitur
 
 is not applicable in this kind of case. See
 
 Sherlock
 
 v.
 
 Strouss-Hirshberg Co.,
 
 132 Ohio St., 35, 4 N. E. (2d), 912.
 

 With these rules in mind, let us turn to an examination of the evidence in the instant case. Such evidence shows that Myco-sheen is a liquid floor dressing used extensively on wood floors by a number of chain de
 
 *385
 
 partment stores throughout the country. According to the testimony of a division manager of the concern which manufactures this product, its base is a solvent— a derivative of petroleum with the lubricating qualities removed; resins are added to supply the body.
 

 Positive and uncontradicted testimony was to the effect that Myco-sheen had last been applied to defendant’s hardwood, maple floor on the evening of December 8, 1945, and that the application had been made in a usual way and in a manner approved by the division manager, referred to above.
 

 Several witnesses, not connected with the defendant, who were familiar with the use of Myco-sheen all testified that it dried on floors in the course of a few hours and would possess no slippery qualities on a floor after the elapse of eleven days; such period being the time between the last application of Myco-sheen to defendant’s floor and the time plaintiff fell, as appears from all the direct evidence touching the question.
 

 Positive and uncontradicted testimony further showed that the floor of defendant’s store was cleaned at least once every day with a large, yarn broom and that on the morning of December 19, 1945, prior to plaintiff’s injury, the floor had been mopped three times with an ordinary mop, because of the water and slush tracked in by patrons.
 

 The individual who was manager of defendant’s store on December 19, 1945, testified that at and about such time approximately 3,000 persons visited the .store daily and that to his knowledge no one had fallen except plaintiff.
 

 One of the witnesses called by plaintiff was an industrial chemist who had analyzed a sample of Mycosheen. He stated that it contained paraffin, indicated a petroleum content, and when applied to wood floors would form an oil film. In addition, he testified that water coming in contact with such oil film would
 
 ‘ ‘
 
 sort of emulsify and be slippery.”
 

 
 *386
 
 On cross-examination this witness was asked:
 

 “Q.
 
 Well, would'it [an application of Myco-sheen] stay on eleven days? A. I don’t believe it would form too good a surface in eleven days; it would probably be worn off in that time. ’ ’
 

 A woman friend and former neighbor of plaintiff testified that on the morning of December 18, 1945, when “there wasn’t any snow,” she had slipped and fallen on the floor in defendant’s store, but without injury. She stated:
 

 “Well, I slipped and my right foot slid and made a mark about two to three feet long. I got up, 1 got ahold of the railing, that is where I know it was right at the head of the stairs by the rail; I got ahold of the railing and got up, and I looked on the floor to see what had made me fall, and the floor was oily there; there was an oily substance on the floor, it looked like a place where it had been missed, put on and missed.
 

 “ * * * the floor looked as though it had been cleaned probably the night before. * * * it looked as though there hadn’t been any traffic on it.”
 

 If it is conceded that the testimony quoted above was competent, under the decision in
 
 Brewing Co.
 
 v.
 
 Bauer,
 
 50 Ohio St., 560, 35 N. E., 55, 40 Am. St. Rep., 686, it could be considered only to prove that defendant’s floor was oily and slippery on the morning of December 18, 1945, and that defendant knew or should have known that fact; it was not competent to prove actionable negligence on the part of defendant at the time plaintiff sustained her injury.
 

 The admissibility of evidence as to similar occurrences to show notice or knowledge of danger is generally confined to situations where there are conditions of permanency, such as defects in substantial structures like buildings, machines, sidewalks and streets. Such evidence is not competent or admissible where it relates to a temporary condition which might
 
 *387
 
 or might not exist from one day to the next and where there is no showing that conditions surrounding the prior occurrences persisted and surrounded the occurrence which resulted in plaintiff’s injury. See 29 Ohio Jurisprudence, 680, Section 182; 32 Corpus Juris Secundum, 439, Evidence, Section 585, and 20 American Jurisprudence, 284, Sections 305 and 306.
 

 Although this witness said there were two of defendant’s clerks nearby when she fell and that she complained to one of them afterward, there was no corroboration whatsoever of her testimony as to her fall or as to any oily substance on the floor at that time.
 

 Plaintiff testified that after she had slipped, fallen and broken her wrist and as she was lying on the floor on her left side she noticed that “to the left the floor was real clean looking.” “Well, it looked like an oil or something had been put on this clean floor.”
 

 Plaintiff also deposed that later on she observed “a black substance ’ ’ on her pocketbook and that her hand “was all ground in with a greasy substance.” “Well, it was hard to get off of my hand, just like I had been using a furniture — polishing furniture or something on that order with an oily furniture polish.”
 

 Corroboration of plaintiff’s testimony as to the existence of any oily spot on the floor at and near the time of her fall was totally lacking. In fact, all the other evidence on the subject was to the contrary. Neither was there any corroboration of plaintiff’s statements as to a black substance on her pocketbook or as to grease on her hand.
 

 If plaintiff’s friend slipped and fell on the morning of December 18th in the manner she says she did, it must be taken into account that between that time and the time of plaintiff’s fall, literally thousands of persons had walked over the floor and that the floor had had several moppings besides.
 

 As has already been observed, the undisputed evi
 
 *388
 
 dence showed that defendant’s floor had last been treated with Myco-sheen eleven days before plaintiff’s injury. The statement of plaintiff as to the black substance on her pocketbook and the greasy condition of her hand does not support the claim that the Mycosheen had been improperly applied. Moreover, there is no evidence to the effect that the oil which plaintiff testified she saw on the floor after she fell was placed there by the defendant or its employees, unless it may be assumed that it represented a spot left on the floor some eleven days before. This seems beyond the range of reasonable probability when it is considered that all the testimony on the subject was to the effect that Myco-sheen dries quickly, that the floor was cleaned daily, including the morning of plaintiff’s injury, and that thousands of people had walked over the floor without mishap since the last application of the floor dressing.
 

 “Legal liability for negligence is based upon conduct involving unreasonable risk to another, which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances.”
 
 Englehardt, a Minor,
 
 v.
 
 Phillips,
 
 136 Ohio St., 73, 23 N. E. (2d), 829, second paragraph of the syllabus.
 

 Under all the evidence it cannot fairly be said that defendant’s conduct fell below the standard of care which would be exercised by reasonable men under the same or like conditions. To decide in plaintiff’s favor, it is necessary to indulge in speculation and conjecture and to build inference upon inference, neither of which is permissible.
 

 It is firmly settled by the authorities that negligence is a fact necessary to be shown; it will not be presumed. Thus, where liability depends upon the carelessness or fault of a person or his employees, the
 
 *389
 
 right of recovery must be based on competent evidence. It is incumbent on the plaintiff to show how and why an injury occurred — to develop facts from which it can be determined by the jury that the defendant failed to exercise due care and that such failure was a proximate cause of the injury. A verdict for plaintiff based on conjecture, guess, random judgment or supposition cannot be sustained. See
 
 W. T. Grant Co. v. Webb,
 
 166 Va., 299, 184 S. E., 465. And compare the syllabus of
 
 Gedra v. Dallmer Co.,
 
 153 Ohio St., 258, — N. E. (2d), —.
 

 The unsupported testimony of plaintiff that there was oil on defendant’s floor or that such floor had an oily appearance at a particular location and at a particular time on the morning of December 19, 1945, is not enough to establish negligence on the part of defendant or to fix responsibility for that condition on the defendant and render it liable to plaintiff for her misfortune.
 

 In our opinion this case is controlled by the decisions of this court in the
 
 Fader
 
 and
 
 Robison cases, supra,
 
 with which compare
 
 De Baca
 
 v.
 
 Kahn,
 
 49 N. M., 225, 161 P. (2d), 630,
 
 Bowser
 
 v.
 
 J. C. Penney Co.,
 
 354 Pa., 1, 46 A. (2d), 324, and
 
 Budley
 
 v.
 
 Montgomery Ward & Co.,
 
 64 Wyo., 357, 192 P. (2d), 617.
 

 Upon a consideration of all the evidence we cannot escape the conclusion that no actionable negligence was proved against the defendant, and that it was entitled to a directed verdict at the close of the entire evidence or to judgment notwithstanding the verdict, in accordance with its motions therefor.
 

 The judgment of the Court of Appeals is therefore reversed and final judgment rendered for the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Stewart, Turner and Taft, JJ., concur.