**Anna, M. RYAN et al., Plaintiffs,**

**v.**

**F. W. WOOLWORTH CO., Defendant.**

**Civ. A. No. 5759.**

United States District Court
S. D. Ohio, W. D.

Dec. 15, 1966.

Summary Judgment April 26, 1967.

Joseph C. Kammer, Cincinnati, Ohio, for plaintiffs.

James E. Kimpel, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

HOGAN, District Judge.

This is a diversity, Erie Railroad, fall on a store floor case. A motion for summary judgment has been filed by the defendant and is before the Court on the pleadings consisting of an amended complaint and an answer, the defendant's motion, and the depositions of the plaintiff Anna M. Ryan, her daughter Patricia Ann Duerring, Verna Petri, a saleslady employee of the defendant, and Rose Knauber, the Personnel Manager (of the particular store) of the defendant. The plaintiff has chosen to forego the filing of any affidavits under Rule 56 which, in the light of the provisions of that Rule, the Court construes as tantamount to an admission that all of the evidence which would be produced at the trial relative to the negligence of the defendant is contained in substance in the depositions, based upon which the defense pends its motion.

The plaintiff admittedly fell in a store owned and operated by the defendant in the Western Hills Shopping Center in Cincinnati on Saturday, December 28, 1963. Admittedly the plaintiff was a customer at that time and was an invitee of the defendant. According to the plaintiff's testimony in her deposition, she suffered substantial injuries.

In the amended complaint, the plaintiff charges the defendant with negligence in two respects:

First, "in permitting a foreign substance to fall and accumulate on the waxed floor of the defendant, causing the slippery condition to exist."

Second, "in permitting an uneven waxed condition to remain on the floor in the rear portion of the store by removing temporary display racks around which defendant's customers wore the wax, leaving the waxed condition in the area wherein the plaintiff fell."

On the day in question, the plaintiff and her daughter entered the defendant's store. Plaintiff was carrying her daughter's ten-months-old baby as they walked through the store. Both the plaintiff and her daughter were familiar with this particular store, having been in there previously, as well as on this occasion, for shopping purposes. They entered a door at the rear of the store and were walking toward a shower curtain display when plaintiff fell. The testimony of the plaintiff describing the fall is as follows:

"Q. What caused you to fall?

A. It was slippery.

Q. Do you know what caused the floor to be slippery?

A. I couldn't say that for sure, but it looked to me like there was a film on it and you couldn't see it if you looked directly down on it.

Q. A film of what?

A. I couldn't say for sure, but it looked in the form of that snow, it looked like some of that snow. That's what it looked like."

The plaintiff's daughter testified as follows:

"Q. Was there any foreign substance on it?

A. When mother got up, I helped her brush her coat off, and she had —it looked like that snow.

Q. But you don't know what it was?

A. No."

The daughter also testified that when one moved back a distance of some fifteen feet from the place where her mother fell, that it looked shinier than other parts of the floor in that general area. While the plaintiff testified that she slipped and there was something on the floor, she also testified that she did not know what that "something" was. The daughter added that she was walking a little ahead of her mother through the store, slipped on something, "that little stuff there. I think it was that Christmas snow."

The store employees testified that prior to Christmas the particular part of the store aisle in which the plaintiff slipped had been covered with some

racks used to display Christmas ornaments. That particular part of the store was used for temporary display purposes—in other words, it was the custom of the store to block off a portion of that aisle with racks and use them for display purposes at certain times of the year, one of them being the Christmas shopping season. There is also in the record, construed most favorably to the plaintiff, from which one could deduce that these ornaments were covered to some extent with an artificial substance known as artifical snow, and it could also be concluded from the evidence that some of this snow had rubbed off and fallen down on the floor at or near the spot at which the plaintiff fell. In any event, the daughter's description of what was on the floor, as she saw after her mother fell, was "little stuff there" which she thought was Christmas snow.

The foregoing is a fair summary of the depositions insofar as the negligence claim based on a foreign substance being on the floor is concerned. With respect to the other claim of negligence, the "uneven waxed condition" and viewing that evidence most favorably to the plaintiff, it appears that the defendant had waxed the whole floor in the store in November of 1963; that some time after the wax was applied, temporary Christmas display racks were placed on part of the floor, i. e., in an area in the rear normally used for passageway purposes. On December 24 or 26th, these racks were removed and the area was open to the customers on December 26 and thereafter.

One of the defendant's employees testified that after the racks had been removed, the floor immediately beneath was "a little shiny and that, but that is because the merchandise has been sitting there. All the walking from the customers and that had not marred it like it does in the other part of the store where everybody walks all the time." Plaintiff's daughter testified that the area where her mother fell "was shinier than the area that had been walked on * * * but she did not know what it was she brushed off her mother's coat, but it looked like snow * * * that you had to get back from the spot approximately fifteen feet or so before you could see the difference between it being shinier and not shinier."

The Ohio substantive law applicable to store floor and invitee cases has undergone a considerable revolution, or what might be described as a series of revolutions over the past twenty years. This is essentially an uneven wax case (since the claim in respect of the snow is certainly not that there was sufficient snow there for the plaintiff to trip on—the claim is that the artificial snow contributed to the slipperiness of the floor). In that respect, i. e., the partly waxed floor respect, this case is very similar to S. S. Kresge Co. v. Holland, 158 F.2d 495 (6th Cir., 1946). In that case the Sixth Circuit squarely held, applying the then law of Ohio, that an uneven slipperiness raised a jury question of "prudently maintained." However, in 1950, in deciding Boles v. Montgomery Ward & Co., 153 Ohio St. 381, 92 N.E.2d 9, the Supreme Court of Ohio introduced a "reasonably safe condition" rule in an oiled floor case in which there was some direct evidence that the traffic conditions in the particular store at the particular place had caused a condition of slipperiness or non-slipperiness different from the conditions generally existent in the store. In the Boles case the Court held that a directed verdict for the defense was in order. Of course, in both that case and in the previous Supreme Court case of Penney Co. v. Robison, 128 Ohio St. 626, 193 N.E. 401, 100 A.L.R. 705, the Court held that it is not negligence per se for a storekeeper to oil or wax his floor. In the earlier case the Court pointed out a duty of "maintenance of the floor thereafter," which in the latter case apparently does not include a duty of maintaining an evenness of condition in the face of traffic.

The next case in point of time to come before the Supreme Court was Anaple v. Standard Oil Co., 162 Ohio St. 537, 124 N.E.2d 128 (1955). In that case it ap-

peared that the plaintiff slipped while walking on some grease in a lubritorium after he had gotten out of his car—this "consisted of a heavy grease * * * there was a spot five inches across in a kind of circular shape." The plaintiff in Anaple strongly relied on S. S. Kresge Co. v. Holland, supra; the Ohio Court of last resort indicated in its opinion that while the Kresge case clearly reflected Ohio law as of the time of its decision, that law had been changed in Boles v. Montgomery Ward, supra.

Syllabus 2 in the Anaple case, which sets forth the law of Ohio, is as follows:

> "2. Where there is no evidence as to how much grease was in a mere five-inch spot of heavy grease on the floor just outside the door of a lubritorium, apart from testimony of a customer who slipped on it that enough grease got on his clothes to be noticeable and that he later had it cleaned off his shoe and his pants, the potential hazard from such a grease spot is too slight to justify a conclusion that the duty of ordinary care, which the operator of such lubritorium owes to his customers, would require such operator to prevent or remove such a grease spot, or to warn his customers about it."

The Boles case and the Anaple case are certainly authorities for the proposition that in Ohio as a matter of substantive law, while a storekeeper owes the duty of ordinary care to maintain his premises in a reasonably safe condition for the protection of such invitees, nonetheless, a storekeeper has not failed in his duty if there are conditions which present only a "slight" hazard. If there were any doubt of that prior to 1966, that doubt seems to be dispelled in the light of Helms v. American Legion, 5 Ohio St.2d 60, 213 N.E.2d 734 (1966). In the Helms case a plaintiff fell as the result of her heel being caught in "an irregular shaped hole about one and one-quarter inches in diameter and one-half inch deep." This is certainly a more substantial condition of "unsafety" than "a little snow" and a condition of unevenness in waxing not apparent to the eye but which could be viewed only upon a withdrawal of fifteen feet. In the Helms case the Supreme Court of Ohio reasserted the minimal or slight or trivial rule as a matter of substantive law. The syllabus reads:

> "The owners or occupiers of private premises are not insurers of the safety of pedestrians traversing those premises, and minor or trivial imperfections therein, which are not unreasonably dangerous and which are commonly encountered and to be expected, as a matter of law do not create liability on the part of such owners or occupiers toward a pedestrian who, on account of such minor imperfection, falls and is injured."

The Supreme Court emphasized that its present majority was agreeing "with the dissenting opinion in the *Smith* and *Schilliger* cases, Smith, Admr. v. United Properties, Inc., and Schilliger v. Graceland Shoppers Mart, Inc., 2 Ohio St.2d 310, 209 N.E.2d 142 to the effect that no liability rests on the owner or occupier of private premises for minor imperfections therein (here almost minimal in extent) which are commonly encountered and are to be expected and which are not unreasonably dangerous, representing 'trivial departures from perfection' " The dissenting opinion in the *Smith* case, which has been adopted as the present correct statement of the law in the *Helms* case, reviews the case law of Ohio applicable to a storekeeper's responsibilities and in part reads:

> "However, where reasonable minds cannot determine that such condition was unreasonably dangerous, the trial court should not permit a jury to determine that it was. This court has so held in numerous cases in actions by business invitees against occupiers of premises for personal injuries *proximately caused by defects in or hazardous conditions of their premises.* (Emphasis ours.) * * * Our decisions indicate that the common-law duty with respect to business invi-

tees on premises is *only* (Emphasis ours), to maintain them in a reasonably safe condition.' "

We conclude that it is the present law of the State of Ohio that while a storekeeper is obligated to keep his premises in a reasonably safe condition, he meets that duty even though "defects in" or "hazardous conditions" exist, provided those defects and hazards are "trivial" or "minimal." If the hazard of a hole one and one-half inches in diameter and one-half inch deep to a lady walking in high heeled shoes is "trivial" or "minimal" under the substantive law of Ohio, this Court is forced to the conclusion that a "little snow" or "shiny area" is also. If the question were presented to this Court on a motion for a directed verdict, this Court would feel constrained to grant that motion if the evidence before it were identical with what it is now. While the summary judgment rule (56) gives the plaintiff an opportunity to file affidavits setting forth "specific facts" and while the plaintiff has not elected to take advantage of that opportunity, and while it might be said with reason that the plaintiff therefore is indicating that there will be no difference in the evidence now and on a trial; nonetheless, this Court is not warranted in assuming at this stage of this case that the plaintiff does not have additional evidence of some character available. As recently as December 8, 1966, the Sixth Circuit in Aetna Insurance Co. v. Loveland Gas & Electric Co., 369 F.2d 648 said:

"We deem it preferable to dispose of negligence cases in plenary proceedings."

While a summary judgment granted in a District Court was affirmed in the Aetna case, nonetheless it does appear that in addition to depositions, the case in the District was presented also upon some "stipulations." That is not the case here.

The motion for a summary judgment will, therefore, at this stage be overruled. At the pretrial of this case, the plaintiff is directed to comply with Rule 10 of the Rules of this District as amended January 31, 1966. If at that time the plaintiff has no further evidence to offer with respect to the allegations of negligence, the motion for summary judgment may then be renewed.

## SUMMARY JUDGMENT

Reference is made to this Court's Memorandum Opinion and Order of December 15, 1966, overruling a motion for a summary judgment filed by the defendant and concluding, "At the pretrial of this case, the plaintiff is directed to comply with Rule 10 of the Rules of this District as amended January 31, 1966. If at that time the plaintiff has no further evidence to offer with respect to the allegations of negligence, the motion for summary judgment may then be renewed."

That rule, in effect since January, 1966, provides in part, "Any judge * * * may require respective counsel, before, at, or after any pretrial conference, to provide adversary counsel with a list of the names * * * of each witness expected to be called at the trial, together with a brief statement of what counsel proposes to establish by the testimony of each witness."

At the pretrial, as a part of a pretrial statement submitted by the plaintiff, it was candidly stated, "* * * basically the only additional facts which bear upon the liability issue will be testimony by both Anna M. Ryan, as well as her daughter, Patricia Ann Duerring, that at the time of the fall the woman in charge called for a boy to sweep the area immediately after the fall. Plaintiff also expects to have additional testimony by way of an admission by either Rose Knauber or Louise Witte, who stated immediately after the fall, 'It is slippery here.' In addition to the above additional expected testimony, plaintiff expects the testimony to be substantially as related in the memorandum against the motion for summary judgment."

Rose Knauber and Louise Witte were employees of the defendant at the store.

■ The sweeping of the floor testimony would be competent on the issue of control of the floor, but is not probative in respect of negligence. Parsons v. Blount, 281 F.2d 414 (6 Cir.1960). There is no doubt that the plaintiff did slip, so that the other additional statement, "It is slippery here," is but cumulative.

■ Our course is directed by the substantive law of Ohio which unquestionably is that "reasonably safe condition" as applied to a store floor is permissive of "minor imperfection."

It is, therefore, the judgment of this Court that the complaint be and it hereby is dismissed at plaintiff's costs.