Appellants, Marjorie and Bailey Donato, appeal from a summary judgment by the Lake County Court of Common Pleas, granted in favor of appellee, Honey Baked Ham Co.
On January 17, 1997, Mrs. Donato went to the Honey Baked Ham Store in Willoughby, Ohio to redeem a gift certificate for a ham. At approximately 11:00 a.m., Mr. Donato drove his wife to the store, which is located in the West Park Plaza shopping center, and dropped her off at the sidewalk near the store's entrance. Mrs. Donato testified, at deposition, that she had to walk through snow to get to the door and that she was wearing rubber-soled Timberline boots. When she entered the store, she walked across an eight to ten foot mat and then tile floor to get to the order counter. After Mrs. Donato received her ham, she turned around to exit the store and slipped and fell on the tile floor. She testifed that she fell because the tile floor was wet and that she did not know the source of the water or how long it had been on the floor.
On January 20, 1998, Mr. and Mrs. Donato filed a complaint against appellee alleging that appellee's negligence proximately caused Mrs. Donato's fall and resultant injuries and Mr. Donato had been deprived of the companionship and services of his wife. On June 18, 1998, appellee filed a motion for summary judgment, attaching the deposition testimony of Mrs. Donato. Appellee argued that summary judgment was appropriate because reasonable minds could only conclude that Mrs. Donato fell on water tracked into the store, and appellee had no duty to protect its customers from such an open and obvious condition.
In response to appellee's motion for summary judgment, appellants argued that the "very slippery" nature of the tile on appellee's floor was a latent or concealed danger of which appellee was aware and that it breached its duty by failing to warn Mrs. Donato of that condition. To support their argument, appellants attached the deposition testimony of David Olsen, a former manager of the Willoughby Honey Baked Ham Store, who testified as follows:
 "Q. You indicated that the floors are very slippery when they're wet?
"A. Very slippery.
 "Q. Have the employees had trouble slipping after they've mopped the floor?
 "A. Yes. I myself have fallen a number of times, employees have fell. Sure.
 "Q. And why it that? Is that because of the type of tile that's on the floor?
 "A. It's definitely the type if tile. It's very slippery floor, and that's not the first customer, who, I would say, fell in our stores.
 "Q. Oh. Tell me, what other incidents have there been that you recall?
 "A. In general, people slipping but not really wanting a report filled out, so it's nothing that could be documented, but it's — the floor has to be constantly maintained, and I mean constantly maintained for — when you know, when there's inclement weather. So you have to be very cautious about the floor, and basically the only defense you have against slippage is putting out a "Wet Floor" sign and at this particular time of year, the store only allows for, cost-wise, one mat in front of the door. During Christmastime and holiday times they provide extra money for more mats to be purchased for the rest of the store for — for a longer dry area to walk on; and there's times where we even have to put cardboard down at the holiday times so people don't slip, because you just can't mat the whole floor. But this time of year we only have costs for one mat here and one mat here, and as you can see, there's a lot of area that people, you know, are not walking on.
 "Q. When you have these other mats at Christmastime, don't you then retain them in the store for — for use?
 "A. No. those — those, for cost purposes, are given back to the company.
 "Q. Oh. Have there been complaints that you know of from you or in your store to the company about the condition of the floor?
 "A. Well, it's been made aware that, you know, employees fall, employees slip, and so forth.
 "Q. When you say `it's been made aware,' how it it made aware?
 "A. Well, supervisors know that employees fall, employees slip. I mean, when you're mopping the floors, you pretty much have to ice skate."
On August 13, 1998, the trial court granted summary judgment in favor of appellee. From this judgment, appellants filed a timely notice of appeal assigning the following error:
 "The trial court erred as a matter of law in granting the motion for summary judgment."
Summary judgment is inappropriate unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. In reviewing a motion for summary judgment, the evidence must be construed in a light most favorable to the party opposing the motion. Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45,47, 517 N.E.2d 904. Summary judgment may be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
The parties do not dispute that Mrs. Donato was a business invitee. In Sharp v. Bohr (Aug. 1, 1997), Lake App. No. 96-L-175, unreported, we summarized the applicable law governing the duty owned to business invitees:
 "A store owner owes a business invitee a duty of ordinary care in maintaining the premises in a reasonably safe condition so that patrons are not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474. However, a store owner is not an insurer of a customer's safety, and is under no duty to protect patrons from conditions `which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.' Id. at 203, quoting Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus. The duty of the store owner is to warn of latent or concealed perils. Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49, 50, 566 N.E.2d 698."
Appellant contends that summary judgment was inappropriate in this case because reasonable minds could come to different conclusions as to whether the alleged unusually slippery nature of appellee's floor was a latent or concealed peril of which appellee was aware. Appellee contends that given the weather conditions on the day of Mrs. Donato's fall, it was equally apparent to appellee and Mrs. Donato that the floor might be slippery due to water tracked in from the outside by the store's customers; therefore, appellee had no duty to protect Mrs. Donato from such an open and obvious risk.
In Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381,92 N.E.2d 9, the Ohio Supreme Court stated:
 "Ordinarily, no liability attaches to a store owner or operator for injury to a patron who slips and falls on the store floor which has become wet and slippery by reason of water and slush tracked in from the outside by other patrons." Id. at paragraph two of the syllabus.
The Boles court did recognize that "[cases] of this type sometimes involve narrow distinctions and a decision in each case depends largely on the facts of the particular case." Id. at 384. In the instant case, we cannot conclude, as a matter of law, that appellee owed no duty to Mrs. Donato.
As stated by the Ohio Supreme Court,
 "Although the owner or operator owes this duty of ordinary care, `the liability of an owner or occupant to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or in failing to warn him of dangers thereon, must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon.'" Debie v. Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38, 227 N.E.2d 603, quoting 38 American Jurisprudence, 757, Negligence, Section 97.
The deposition testimony of David Olsen raises an issue for trial in that appellee may have had superior knowledge that the tile floor was especially slippery when wet. He testified that appellee was aware that the floor became very slippery when it was wet and that the store's employees had difficulty mopping it. His testimony was that even he and other store employees often slipped on it. This occurred despite their knowledge that the floor was extremely slippery when wet. Certainly the inference is that this particular floor would exceed a reasonable person's expectations as to the degree of slipperiness. Further, even though appellee knew that the floor became especially slippery during the months of inclement weather, the company did not put out any "Wet Floor" signs and only provided extra mats at Christmastime. We cannot conclude, as a matter of law, that the "very" slippery nature of the floor at the Honey Baked Ham Store was open and obvious to Mrs. Donato and that appellee had no duty to protect her. These questions should be decided by a jury and summary judgment was inappropriately granted in this case.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.
 _______________________ JUDGE ROBERT A. NADER
CHRISTLEY, P.J., O'NEILL, J., concur.