DECISION
This is an appeal by plaintiff, Howard Burns, from a judgment of the Ohio Court of Claims finding in favor of defendant Department of Rehabilitation and Correction, on plaintiff's negligence claim.
On September 10, 1996, plaintiff filed a complaint against defendant, alleging a cause of action for negligence. The complaint alleged that plaintiff, while an inmate at the Chillicothe Correctional Institution, was working as an orderly in the institution's dispensary on July 23, 1995, when he was directed to get a bucket of water from a sink located in a storage closet. It was alleged that two plastic containers, not fully secured and containing caustic substances, were stored on a shelf above the sink and that, when plaintiff attempted to fill the bucket, the containers fell from the shelf and spilled on plaintiff. Plaintiff alleged that defendant was negligent in storing the caustic substance and that plaintiff suffered pain and discomfort as a direct and proximate result of such negligence.
The matter came for trial before the Court of Claims beginning on March 10, 1998. The plaintiff testified on his own behalf and gave the following account of the incident. In July 1995, plaintiff was in inmate at the Chillicothe Correctional Institution; part of his duties at the institution involved working as a porter in the facility's dispensary.
On Sunday, July 23, 1995, plaintiff was told by his supervisor to fill a bucket of water and mop the dispensary. Plaintiff went into the porter's closet, which contains a sink and three shelves used for storing supplies. The defendant stated that on the top shelf, located about even with his eye level, was a cleaning product called "Fresh Plus." The middle shelf contained toilet tissues and paper products. There is also a shelf in the corner of the closet.
There were two bottles of Fresh Plus on the top shelf at the time of the incident. Plaintiff stated that the bottles were positioned back-to-back, so that the bottle in front was extending an inch or two over the edge of the shelf. Plaintiff was facing the shelf, leaning over the sink, when a bottle of Fresh Plus fell, causing the contents to splash onto plaintiff's upper chest, left forearm and left side of his head. The plaintiff stated that after the bottle fell to the floor, the cap was missing from the bottle.
The plaintiff told his supervisor that the cleaning product splashed on him. Plaintiff's supervisor instructed him to rinse his skin with water. Plaintiff stated during direct examination that the incident occurred at approximately 6:00 p.m. However, he acknowledged during cross-examination that he had filled out an accident report after the incident indicating that the bottle spilled on him at 7:35 p.m. Plaintiff received medical treatment at approximately 8:00 p.m. The next day, plaintiff went back to the infirmary and received further medication. Approximately eight or nine months later, a burn specialist treated plaintiff at Ohio State University Hospital. Plaintiff stated that the areas on his body where the cleaning product made contact "still itch and stuff like that." (Tr. 38.)
During cross-examination, plaintiff stated that he was the only porter going in and out of the closet that weekend. He further stated that he did not know what caused the bottle of Fresh Plus to fall from the shelf. Although plaintiff observed that the bottles were positioned back-to-back that day, plaintiff did not feel that he had a duty to rearrange the bottles.
Plaintiff presented the testimony of a number of inmates at the Chillicothe Correctional Institution who, at various times, worked as porters in the prison's dispensary. Inmate Gerald Hampton worked as a porter at the institution in 1995, and his duties included performing inventory of the utility closet. Hampton stated that inmates were responsible for stocking materials on the shelves. He stated that Fresh Plus was supposed to be placed on the top shelf of the closet. Hampton testified that when bottles were placed back to back, the bottle to the front would extend out about an inch and one-half. Inmate Gary A. Kirk, who worked as a porter in the dispensary, stated that he once told an inmate to put Fresh Plus on the floor rather than on the top shelf of the closet, but that Officer Ison told him to mind his "own damn business." (Tr. 148.)
Another inmate, Brian K. Mullin, when asked during direct examination about the purported incident between inmate Kirk and Officer Ison, testified that he did not remember any such incident regarding the stocking of shelves. Mullin stated that when he stocked the closet shelves he did not put Fresh Plus, or any other chemicals, above three feet. Mullin stated that there were times when he observed Fresh Plus on the top shelf with the cap off the bottle. Officer Ison told Mullin to "replace it where it goes, with the lid tight." (Tr. 166.) He stated that Officer Ison never ordered him to remove bottles of Fresh Plus from the lower area of the closet and put them on the top shelf.
Mullin further testified that in the past he had observed plaintiff use Fresh Plus to perform his cleaning duties. Mullin stated that he sometimes noticed Fresh Plus on the top shelf after the plaintiff had been in the closet.
Inmate Alfonso Ferguson stated that he used the utility closet and that, at various times, put Fresh Plus on the bottom, middle or top shelf "according to how quick I was trying to get over to the hospital." (Tr. 194.)
Plaintiff called William Carmean as a witness as on cross-examination. Carmean is the safety officer for the Chillicothe Correctional Institution. Carmean stated that the institution had a policy in effect at the time of the incident regarding the storage of dangerous chemicals. Carmean stated that there were "sporadic" problems with the control and storage of chemicals. Carmean later testified on direct examination that, prior to plaintiff's injury, the institution had no knowledge that Fresh Plus was being improperly stored in the dispensary closet.
Plaintiff also called Verna McKeevers to testify as on cross-examination. McKeevers is a correction's officer at the Chillicothe Correctional Institution, and worked in the dispensary in 1995. McKeevers was involved in an incident in which her hand came in contact with some chemicals during an inspection of the utility closet after the porters had finished cleaning. McKeevers wiped her hand across her face and the chemicals left a red mark on her face for approximately one day. McKeevers testified that Fresh Plus was always kept down by the sink on the floor.
Alice Ault is the health care administrator at the Chillicothe Correctional Institute, and she oversees the activities in the dispensary. Once a year the institution conducts an internal audit regarding the storage of cleaning materials. According to Ault, in the twenty-three years she has worked at the institution, she was unaware of any incidents where inmates were injured by chemicals or cleaning products falling from shelves.
The Court of Claims rendered a decision on October 23, 1998, finding that the plaintiff had failed to prove his case by a preponderance of the evidence. Accordingly, the court granted judgment in favor of the defendant.
On appeal, plaintiff sets forth the following two assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT RULED THAT THE INSTITUTION DID NOT HAVE NOTICE OR KNOWLEDGE OF PROBLEMS WITH STORAGE OF CAUSTIC SUBSTANCES WHICH CAUSED APPELLANT'S INJURY.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
Plaintiff's assignments of error are interrelated and will be discussed together. Plaintiff contends that the trial court erred in finding that defendant did not have notice of knowledge regarding the storage of caustic substances and that the court's decision finding in favor of defendant was against the manifest weight of the evidence.
In order to prevail on his negligence claim, plaintiff was required to establish that "defendant owed him a duty of care, defendant breached that duty, and defendant's breach of its duty was the proximate cause of plaintiff's injury." Dean v. Dept. ofRehabilitation Corrections (Sept. 24, 1998), Franklin App. No. 97API12-1614, unreported (1998 Opinions 4498, 4500). In general, "the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know." Id. at 4502.
In the present case, the trial court, in its decision finding that plaintiff failed to prove negligence by a preponderance of the evidence, held in part:
 Plaintiff * * * testified that he worked on this weekend from 8:00 a.m. until the incident took place, and that he was the only porter that worked that day. Therefore, plaintiff would have been the only porter going in and out of the porter's closet that day. Plaintiff testified that he had seen a bottle of Fresh Plus hanging over the shelf earlier that day when he entered the porter's closet, but did nothing to rearrange that bottle. Plaintiff testified that he was filling the first bucket when the Fresh Plus sprayed him. However, he could not recall testifying in his deposition that, "when I got hurt I was on bucket number two.
* * *
 The court finds that, contrary to plaintiff's testimony, he was not assigned to work during the second shift on Sunday, July 23, 1995. Inmate Kirk worked the second shift. Sunday was the slowest day of the week — no doctors were on duty and no sick calls were scheduled on weekends. Weekend porters usually only had to dry mop the floors and empty trash cans. After 3:00 p.m. on a weekend, no second-shift porter inmate should be in the area of the utility closet.
 The inmates were instructed to stock the Fresh Plus near the floor, and they usually did. Toilet paper, paper towels, soap and Windex bottles were stocked on the top shelf. Inmates were required to follow the rules. Defendant had never had similar problems at the institution, or notice of any alleged problems.
 The porter's closet was stocked every Monday morning. By Sunday, the stock would be depleted, with plenty of room to place Fresh Plus on any of the shelves. Furthermore, the court finds that the shelves were stable and didn't vibrate.
 After evaluating all the testimony and credibility of each witness, the court concludes that plaintiff has failed to prove his case by a preponderance of the evidence. * * *
Plaintiff initially contends that the trial court erred in its finding that the institution did not have notice or knowledge of problems with the storage of caustic substances that caused plaintiff's injury. In support, plaintiff argues that Plaintiff's Exhibit No. 9, introduced at trial, indicates that the institution's safety officer was aware of storage problems with cleaning supplies long before plaintiff's accident.
The exhibit cited by plaintiff is a memorandum prepared by William Carmean, dated September 30, 1994, in which Carmean indicates that an inmate, Chester McKnight, had been injured after being splashed with a cleaning product. In the memorandum, Carmean notes that the inmate was washing down the walls of a shower "using Husky Toilet Bowl Cleaner when a small portion splashed into his eye causing some blurred vision." The inmate had told Carmean that he received permission to use the substance to clean the shower walls because it was the only cleaning compound that would remove soap buildup. Carmean noted in the memorandum that he disbelieved the inmate's claim that he had received permission to use the product in such a manner. Specifically, Carmean stated: "I advised inmate McKnight the product's name alone, `Husky Toilet Bowl Cleaner,' is enough evidence to prove its proper usage."
In the memorandum, Carmean further indicated that all units are required to keep a daily "Chemical/Caustic Inventory Log" of all cleaning supplies, and that "[i]f those standards had been followed — by properly distributing the correct cleaners for showers — then this accident would have never occurred." Finally, in the memorandum, Carmean noted that during an inspection he discovered "numerous containers setting out and accessible to anyone," including "oil based and latex paints, brushes, rollers, and trays."
At trial, when questioned about Plaintiff's Exhibit No. 9, Carmean testified that the inmate at issue in the memorandum was not injured as a result of the improper storage of chemicals; rather, he was improperly using a cleaning product. Carmean further testified that in 1995, at the time of plaintiff's injuries, there was "no indication" or "notice" that Fresh Plus was being improperly stored in the dispensary closets.
As noted above, the trial court made a finding that defendant "never had similar problems at the institution, or notice of any alleged problems." The court's finding as to notice appears to be directed in part toward the issue of whether defendant's policy was to instruct inmates to stock Fresh Plus on or near the floor of the closet as opposed to the top shelf. The court heard conflicting evidence on this issue. As previously noted, some of the inmates testified that they were instructed to place Fresh Plus on the top shelf. However, one of plaintiff's own witnesses, inmate Mullin, disputed this fact and testified that he never placed cleaning products above three feet in the closet. Defendant's witness McKeevers testified that Fresh Plus was always stored on the floor. To the extent that the evidence was conflicting on this issue, it was within the province of the trial court, as trier of fact, to determine the credibility of the witnesses and to resolve the conflict. Regarding the trial court's finding of "no similar problems," the evidence supports a finding that no inmates had ever been injured by caustic materials falling off of the closet shelves prior to the incident involving plaintiff. As previously noted, there was testimony by Carmean and Ault that no similar incidents had ever occurred prior to plaintiff's injuries and plaintiff did not present any evidence to the contrary.
Although the trial court's decision does not specifically address the import of Plaintiff's Exhibit No. 9, the court presumably did not find the memorandum relevant or probative of defendant's knowledge of improper storage of chemicals in the porter's closet. As noted above, the memorandum addressed the fact that an inmate was injured as a result of improperly using a cleaning product. While the memorandum at issue indicates that the institution had notice that an inmate had improperly used a cleaning product and that painting materials had been found "accessible to anyone," the memorandum arguably does not indicate that defendant had knowledge that caustic cleaning substances were being improperly stored on shelves. Thus, we conclude that the court's finding that defendant "never had similar problems at the institution, or notice of any alleged problems" is not clearly erroneous. We further note that, although plaintiff introduced other memorandum concerning remedial measures taken by the institution after the incident involving the plaintiff, the trial court did not err in failing to consider evidence of subsequent remedial measures as proof of belated knowledge of a dangerous condition. See Evid.R. 407; McFall v. Youngstown State Univ.
(June 11, 1992), Franklin App. No. 91AP-1357, unreported (1992 Opinions 2404, 2408-2409).
Even assuming, however, that defendant had general knowledge of a dangerous condition involving the storage of cleaning products and failed to act, plaintiff was still required to prove that defendant's conduct proximately caused his injuries. Upon review, we find that plaintiff did not sustain his burden.
In the present case, plaintiff, who was the only witness to the accident, acknowledged at trial that he did not know what caused the bottle to fall from the shelf. The fact that a bottle of Fresh Plus fell from the shelf and injured plaintiff did not require the trial court to assume negligence on the part of defendant. See, e.g., Green v. Castronova (1966), 9 Ohio App.2d 156,161 ("It is well settled that no presumption or inference of negligence arises from the bare happening of an accident or from the mere fact that an injury has been sustained"). We note that there was evidence before the trial court that plaintiff was the only porter in the dispensary that day. However, the record in this case fails to indicate what caused the bottle to fall, who placed the bottles back-to-back on the shelf, how long the bottles were in a perilous position or that defendant had knowledge that the bottles were so positioned inside the closet.
Negligence is "a fact necessary to be shown," and it is "incumbent on the plaintiff to show how and why an injury occurred to develop facts from which it can be determined * * * that the defendant failed to exercise due care and that such failure was a proximate cause of the injury." Boles v. Montgomery Ward Co.
(1950), 153 Ohio St. 381, 388-389. Further, a reviewing court "will not reverse on manifest weight grounds unless, after examining the entire record, the court is satisfied that the trial court's conclusion `was so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to result in a violation of substantial justice.'" Beard v. Dept. of Rehab. Corr. (Feb. 21, 1995), Franklin App. No. 94API05-673, unreported (1995 Opinions 639, 641), citing Walton v. Dept. of Rehab. Corr.
(June 25, 1992), Franklin App. No. 91AP-935, unreported (1992 Opinions 2629, 2631). Based upon the state of the record in the present case, plaintiff failed to show that the only reasonable inference to be drawn from the facts was that defendant was negligent and that such negligence proximately caused plaintiff's injuries. Accordingly, the trial court did not err in finding that plaintiff failed to prove negligence by a preponderance of the evidence, and we therefore reject plaintiff's contention that the decision was against the manifest weight of the evidence.
Further, while defendant owed plaintiff a duty to exercise reasonable care, plaintiff was "also under a duty to exercise reasonable care for his own protection." Dean, supra, at 4502. In its decision, the trial court noted plaintiff's testimony that he was aware that the bottle of Fresh Plus was hanging over the shelf earlier that day when he entered the closet, but that he did nothing to rearrange the bottle. The record supports the trial court's finding that plaintiff was aware of the position of the bottles but disregarded any attempt to remedy a potential danger. We note that, during cross-examination, plaintiff was asked why he did not reposition the bottle so that it would be side by side with the other bottle of Fresh Plus. Plaintiff responded, "[w]hy would I do that?" (Tr. 71.) Plaintiff also stated that it was "not my duty" to remedy the position of the bottle. (Tr. 84.) During redirect examination, plaintiff stated that in the past he had put bottles up on the shelf. However, when asked by his counsel whether he made sure that the bottles did not hang over the edge he responded, "[n]o, I didn't do it to make sure it didn't hang over." (Tr. 86.) Accordingly, the trial court could have found that plaintiff's injury would have been avoided had plaintiff exercised reasonable care for his own safety.
Based upon the foregoing, plaintiff's first and second assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
KENNEDY and BRYANT, JJ., concur.