STURGILL

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.**

2002-Ohio-7403.]

Court of Claims of Ohio.

No. 2001–08595.

Decided Dec. 13, 2002.

Richard F. Swope, for plaintiff.

Betty D. Montgomery, Attorney General, and Lisa M. Eschbacher, Assistant Attorney General, for defendant.

STEVEN A. LARSON, Magistrate.

{¶ 1} Plaintiff brings this action against defendant alleging negligence. The case was tried to the court on the issue of liability.

{¶ 2} At all times relevant to this action, plaintiff was an inmate at Belmont Correctional Institution, under the custody and control of defendant pursuant to R.C. 5120.16.

{¶ 3} Plaintiff gave the following testimony at trial. On August 26, 2000, between 5:15 a.m. and 5:40 a.m., plaintiff and several other inmates were watching television in the "4–House" dormitory. Two corrections officers, Jason Travis and Michael Greer, entered the room and were discussing their concerns about a "fog count" that morning. Corrections Officer Greer was standing near a window while Corrections Officer Travis walked toward plaintiff and the other inmates. Plaintiff testified that CO Travis made a comment about "the little bitches watching Star Trek." Plaintiff told the officer to "watch it" regarding the use of the word "bitches." According to plaintiff, CO Travis then kicked the bottom of his chair, causing him to fall to the ground. When plaintiff told the officer that his back was hurt and that he needed medical attention, CO Travis held a lit cigarette over him and told him to get up or he would drop it on his face. Plaintiff then stood and left the room.

{¶ 4} Plaintiff initially thought his back was strained, but his condition worsened. He subsequently went to the institution's medical personnel and told

them that "somebody" kicked a chair out from underneath him. Plaintiff received pain medication and was scheduled to see a physician. According to plaintiff, Travis came to his bunk the next evening and threatened that he would be in for a "world of hurt" if he mentioned Travis's name in connection with the incident. Plaintiff stated that nobody else was in the area when CO Travis made the remarks. On September 21, 2000, plaintiff filed an informal complaint. Plaintiff was not going to mention Travis's name at first, but after CO Travis threatened him, he felt that the situation was serious.

{¶ 5} When asked during direct examination whether he was sure that Travis kicked the chair, plaintiff responded that there was nobody else behind him at the time. Plaintiff acknowledged that he did not actually observe the officer kick his chair but stated that he felt an impact.

{¶ 6} During cross-examination, plaintiff acknowledged that at the time of the incident, he was leaning back from the front legs of the chair. According to plaintiff, the front legs were "up slightly." When asked why he waited three weeks to file a complaint, plaintiff stated that at the time, he was unaware of the proper procedures to file a complaint. He later conceded, however, that he had previously used the institution's informal complaint procedures. Plaintiff could not remember whether the grievance procedures were posted at the institution, nor could he recall the exact date that Travis had threatened him.

{¶ 7} Jason Cottrell, an inmate at Belmont, was called as a witness by plaintiff. Cottrell testified that on August 26, 2000, he was watching television in the dormitory with plaintiff and some other inmates. According to Cottrell, CO Travis came into the room and was talking with plaintiff. Cottrell stated that he looked over again, and plaintiff was on his back on the floor. He testified that CO Travis was either beside or behind plaintiff at the time and that plaintiff had to ask the officers more than once for assistance. On cross-examination, Cottrell stated that he did not see Travis kick the chair out from under plaintiff.

{¶ 8} Inmate Bruce Duffield was also called as a witness on behalf of plaintiff. Duffield testified that on August 26, 2000, he was seated approximately six inches away from plaintiff while they were watching television. Duffield heard a "thump," and he looked over and saw plaintiff on the floor. According to Duffield, CO Travis was standing behind plaintiff at the time. Plaintiff's feet were up over the chair with his back on the floor.

{¶ 9} On cross-examination, Duffield stated that he did not see Travis kick the chair out from under plaintiff. Duffield further stated that the front legs of plaintiff's chair were approximately 16 to 18 inches off the floor before he fell.

{¶ 10} On August 25–26, 2000, Officer Michael Greer worked third shift at Belmont. Greer did not recall any unusual events occurring on that date, and he

testified that any unusual incidents would have been recorded in a log book. Greer was shown defendant's Exhibit A, a log book entry for third shift on August 25–26, 2000. The log book did not contain any report of unusual activity between the hours of 5:00 a.m. and 6:00 a.m. Greer testified that a fog count would have been documented in the log book, but no such notation was made on that date. Greer denied that he had observed Travis ever kick a chair out from under plaintiff. He stated that he had first become aware of the alleged incident when he was interviewed by a State Highway Patrol officer.

{¶ 11} Travis testified that he did not recall any incident involving plaintiff on the date in question and denied kicking plaintiff's chair and threatening plaintiff. Like Greer, Travis testified that the first time he learned about any alleged incident involving plaintiff was when he was interviewed by a State Highway Patrol officer.

{¶ 12} In order to prevail on his negligence claim, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant breached that duty, and that defendant's breach of duty proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 423 N.E.2d 467. Ohio law imposes upon the state a duty of reasonable care and protection of its inmates; however, this duty does not make defendant the insurer of inmate safety. *Mitchell v. Ohio Dept. of Rehab. & Corr.* (1995), 107 Ohio App.3d 231, 235, 668 N.E.2d 538. Further, under Ohio law, " '[i]t is well settled that no presumption or inference of negligence arises from the bare happening of an accident or from the mere fact that an injury has been sustained.' " *Burns v. Ohio Dept. of Rehab. & Corr.* (1999), Franklin App. No. 98AP–1574, 1999 WL 1054847, quoting *Green v. Castronova* (1966), 9 Ohio App.2d 156, 161, 38 O.O.2d 176, 223 N.E.2d 641. Rather, "[n]egligence is 'a fact necessary to be shown,' and it is 'incumbent on the plaintiff to show how and why an injury occurred—to develop facts from which it can be determined * * * that the defendant failed to exercise due care and that such failure was a proximate cause of the injury.' " Id., quoting *Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 388–389, 41 O.O. 403, 92 N.E.2d 9.

{¶ 13} As noted, both Travis and Greer testified that they had no recollection of any incident during the third shift on the date in question. They stated that any unusual activity would have been recorded in a log entry, and defendant's Exhibit A fails to show a report of any incident. As also noted, plaintiff initially testified that he waited three weeks to file a complaint because he was unaware of the proper procedures; however, he conceded during cross-examination that he had used the institution's informal complaint procedures before the alleged incident.

{¶ 14} Assuming, however, that an incident occurred on that date, plaintiff has failed to prove negligence on the part of defendant. Plaintiff's theory is that Travis, who was standing behind him before his fall, must have kicked the chair out from under him, thereby causing his injuries. When asked whether he was sure that Travis had kicked his chair, plaintiff's response was that there was nobody else behind him at the time; he acknowledged, however, that he did not see Travis kick his chair, but he believed that he had felt an impact. None of the other witnesses presented by plaintiff had observed Travis kick plaintiff's chair out from under him, and no one had witnessed plaintiff fall.

{¶ 15} There was evidence of another equally plausible cause; specifically, plaintiff's own witness, inmate Duffield, who was sitting approximately six inches from plaintiff, testified that plaintiff was leaning back on his chair before he fell. Duffield estimated that the front legs of plaintiff's chair were as much as 16 to 18 inches off the floor, and plaintiff conceded during cross-examination that he was leaning back on his chair before he fell. Thus, despite plaintiff's contention that Travis must have kicked the chair, an equally reasonable inference from the evidence is that plaintiff's own misuse of the chair caused him to lose his balance and fall.

{¶ 16} Based upon the testimony presented, plaintiff has failed to prove negligence by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

Recommendation for defendant.