MOTORISTS MUTUAL INSURANCE COMPANY, APPELLANT,
*v.* HAMILTON TOWNSHIP TRUSTEES, APPELLEE.

[Cite as Motorists Mut. Ins. Co. *v.* Hamilton Twp.
Trustees (1986), 28 Ohio St. 3d 13.]

(No. 85-1862—Decided December 19, 1986.)

14

*Rendigs, Fry, Kiely & Dennis, George D. Jonson* and *Donald C. Adams, Jr.,* for appellant.

*James L. Flannery,* prosecuting attorney, and *JoAnne V. Hash,* for appellee.

CLIFFORD F. BROWN, J. In this appeal, this court is presented with the task of determining whether the jury's answers to the interrogatories are so totally irreconcilable with their general verdict that both cannot stand, and judgment must be entered in conformity with the jury's special findings notwithstanding the verdict. For the following reasons, we find that no such irreconcilability exists, and the court of appeals erred in overturning the verdict.

In ruling on a motion for judgment notwithstanding the verdict, the court must construe the evidence most strongly in favor of the party against whom the motion is made. *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275 [74 O.O.2d 427]. Where the evidence is such that reasonable minds may derive differing conclusions therefrom, the motion must be denied. *Id.* The court shall not consider the weight of the evidence or the credibility of the witnesses in determining its ruling on the motion. *Id.; McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269 [40 O.O. 318]. In short, every effort must be made to uphold the verdict if reasonably possible.

The court of appeals herein ruled that the jury verdict in favor of plaintiff could not possibly be reconciled with the jury's answers to certain interrogatories without impermissibly stacking an inference upon an inference. Mindful of the principles outlined above, we must now consider whether the verdict can indeed withstand such scrutiny.

The first of the two interrogatories in question asked: "Did the Plaintiff, Motorists Mutual Insurance Company, prove by a preponderance of the evidence that the Township Trustees, or any employee of Hamilton Township, appeared at any time in the Lester Oeder building on the 10th day of January 1980?" The jurors answered "NO." The second interrogatory reads: "Did the Plaintiff, Motorists Mutual Insurance Company, prove by a preponderance of the evidence that the Township Trustees, or any employee of Hamilton Township, built a fire in the stove located in the Oeder building on January 10, 1980?" The answer was again "NO."

The court of appeals correctly observed that these answers "unequivocally eliminate the possibilities that the trustees themselves or any of * * * [their] employees built a fire in the stove on January 10, 1980." The court then reasoned that, in order to reach the verdict that they did, the jury must have found that some other person was in the trustees' portion of the garage on that day *and* that this other person started a fire in the stove. Since there was no evidence on either point, direct or circumstantial, the verdict necessarily was based on the impermissible stacking of an inference upon an inference, and the trial court should have granted defendant's motion for judgment notwithstanding the verdict.

We cannot agree with this analysis. Who started the fire in the stove is not a determinative issue in this case. The plaintiff's principal theory in this case is that the defendant trustees negligently maintained the stove by permitting its continued operation despite the presence of a hole in the connecting flue pipe. Having proved such negligent maintenance, there was absolutely no necessity to establish additionally who started a fire in the stove on the day in question, since it was not specifically the stove fire which proximately caused the ensuing conflagration, but rather the maintenance of an unsafe condition in an otherwise safe appliance. Since the interrogatory questioning the jury on whether plaintiff had proved that the defendant trustees or their employees had started a fire in the stove that day was not directed to a determinative issue in this case, their negative response cannot be the basis for overturning the verdict on the grounds of irreconcilable inconsistency. Such a finding was not a necessary predicate to the verdict reached.

There was ample evidence from which the jury could have reasonably found that the stove was the originating point of the fire. Lester Oeder, the first person to arrive at the scene that day, testified that the only fire he observed at that point was in the stove area, and that the combustible materials surrounding the stove were in flames. He testified that he watched the flames hit the roof and spread to the other parts of the garage. There was further testimony that all other potential causes of a fire in that area had been ruled out, including arson, faulty electrical wiring, gas, propane, or oil. These facts, if believed by a jury, could reasonably support an inference that the blaze had originated in the stove. A second, *independent* inference also arises from this evidence, *i.e.*, that woodburning stoves do not ignite themselves without human intervention. This inference is not based solely on another inference, which is impermissible. *Hurt* v. *Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329 [58 O.O. 122], paragraph one of the syllabus. It is based on the evidence that the blaze originated in the stove area, and on the reasonable inference drawn therefrom that there must have been a fire in the stove that day, and finally on the sound foundation of common human experience, which tells us that stove fires do not kindle by themselves. Where a jury bases its verdict partly on a reasonable inference drawn from facts in evidence, and partly on an inference drawn both from those same facts and from common human experience, the verdict is not the result of the impermissible stacking of an inference upon an inference.

Viewed in this light, the verdict returned by the jury in favor of plaintiff was not necessarily the result of any impermissible stacking of an inference upon an inference. The jury apparently believed the evidence showing that the conflagration was initially concentrated in the stove area, and that all other potential causes had been eliminated. From this evidence, they could have reasonably drawn an inference that the fire must have originated in the stove itself. The companion inference that

some person must have ignited the stove that day is grounded further on the independent basis of common knowledge that stoves do not ignite themselves.

The remaining elements necessary to the verdict find solid support in the evidence. Once the existence of a fire in a stove has been established as outlined above, the jury could have reasonably found from the other evidence presented that such a fire caused the resulting blaze by virtue of defendant's negligent maintenance of the connecting flue pipe, containing a hole through which burning embers fell on the combustible materials surrounding the stove. These findings are legally sufficient to support the verdict reached.

At this juncture, we take the opportunity to remark that the rule forbidding the stacking of an inference upon an inference is disfavored by scholars and many courts. If such a rule were uniformly enforced, "* * * hardly a single trial could be adequately prosecuted." 1A Wigmore, Evidence (Tillers Rev. 1983) 1106, 1111, Section 41. See, also, *United States* v. *Eustace* (C.A. 2, 1970), 423 F. 2d 569, 571. "Today most students of the problem of inference recognize that *any* single vision about the world or conclusion of fact rests on a *multitude* of inferences, premises, and beliefs, on a large complex of assumptions, and on a body of implicit or explicit principles by which the human organism perceives, organizes, structures, and understands experience; thus it is generally conceded that it is meaningless to denounce multistaged or cascaded inferences." (Emphasis *sic*.) Wigmore, *supra*, at 1112, fn. 3, Section 41. The rule is now rejected in most federal circuit courts. See Louisell & Mueller, Federal Evidence (1977) 646, 666, Section 94 (referring to the rule as "spurious"). Even those courts that have preserved the rule have commented that it is too frequently misunderstood, or misused as a convenient means of excluding evidence regarded as too remote, speculative or uncertain to be of probative value. See *Hurt, supra,* at 331-332; *Orey* v. *Mut. Life Ins. Co.* (1939), 215 Ind. 305, 309-310, 19 N.E. 2d 547, 548-549. The court of appeals' opinion below is an example of the rule's dangerous potential for subverting the fact-finding process and invading the sacred province of the jury. We therefore caution the bench and bar against resorting to this rule too readily and without a sufficient awareness of its pitfalls.

In accordance with the foregoing, the judgment of the court of appeals is hereby reversed, and the jury verdict in favor of plaintiff is reinstated.

*Judgment reversed.*

SWEENEY, HOLMES and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in judgment only.

CELEBREZZE, C.J., and LOCHER, J., dissent.

CELEBREZZE, C.J., dissenting. I share the majority's reservations about the rule against the stacking of inferences. I am convinced, however, that when appellant's theory of liability is broken into its constituent parts, there is a fundamental failure to prove, by direct or circumstantial evidence, the foundation of appellant's claim.

Wigmore recognizes that the true purpose of the rule against pyramiding inferences is to prevent verdicts based on mere speculation or conjecture. 1A Wigmore, Evidence (Tillers Rev. 1983) 1106, Section 41. Courts have formulated and applied this rule in various ways. For example, in *Hurt* v. *Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 332 [58 O.O. 122], this court quoted with approval the following language:

" 'For the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. * * * Such a process may be described as drawing an inference from an inference, and is not allowable. *At the beginning of every line of legitimate inferences there must be a fact, known or proved.*' " (Emphasis added.)

The Rhode Island Supreme Court has recently articulated a concise and sensible explanation of the rule. In *Carnevale* v. *Smith* (1979), 122 R.I. 218, 404 A. 2d 836, the court explained at 225:

"[T]he factfinder is permitted to base an inference on another that it has already drawn. * * * [Citation omitted.] However, our case law makes clear that if a plaintiff intends to meet its burden of proof by means of such pyramiding, the second or ultimate inference drawn by the factfinder is permissible only if the first or prior inference has been established to the exclusion of other reasonable inferences. * * * [Citations omitted.] In this way the ultimate inference rests upon a foundation that logically has the probative force of established fact; were it otherwise, the ultimate conclusion * * * would rest on no more than conjecture and surmise."

Consistent with the foregoing, the instant case can be analyzed. Appellant put forth a theory of liability alleging that the trustees' negligent maintenance of the stove in their portion of the building was the proximate cause of this blaze. The trustees, in defense, attempted to cast doubt on this theory by showing that the fire could not have been caused in the manner which appellant alleged.

Based on their examination of the building after the fire, appellant's experts inferred that the blaze which destroyed most of the structure spread when embers from the trustees' stove fell through a hole in the flue pipe, igniting combustible materials in the room. But this inference is valid, as appellant's own expert admitted, *only* if there was indeed a fire in that stove from which the embers could have escaped. Unfortunately, appellant failed to adduce any factual evidence, direct or circumstantial, from which it could properly be inferred that a fire had been started in the trustees' stove on the date of the blaze.

This is borne out by the jury's answers to the interrogatories, finding

that no trustees or their employees had been in the building or started a fire in the stove on the date in question. Since the factfinder concluded that the trustees or their employees did not start a fire in the stove, appellant is reduced to arguing that some unknown person somehow gained access to the trustees' locked portion of the building and lit a fire in the stove. That is pure conjecture, and demonstrates that appellant's theory as to the origin of this fire is grounded in speculation.

The ultimate inference drawn by the jury in the instant case was that the trustees' negligent maintenance of the stove was the proximate cause of the fire which consumed the building. As stated in *Carnevale, supra,* however, this inference was permissible only if the prior inference, that someone started a fire in the stove, was established to the exclusion of other reasonable inferences. I believe it was not. The trustees' expert testified, based on his examination of the evidence, that arson could not be eliminated as a cause of the blaze, that the fire had its origin in that portion of the building occupied by Lebanon Concrete Products, Inc., and that the stove in the trustees' area of the building should be eliminated as a cause of the blaze. It was, therefore, not permissible for appellant to pyramid an inference that embers falling through a hole in the flue pipe touched off this blaze when the first inference, that there *was* a fire in the stove, had not been established to the exclusion of other reasonable inferences.

It is my view that the appellant in the instant case failed to carry its burden of proof as to the origin of this fire. Appellant offered no evidentiary basis from which the first inference could be made that someone started a fire in the trustees' stove. Absent sufficient proof of a fire in the stove, the trustees' alleged negligent maintenance of the flue pipe could not be shown to be the proximate cause of appellant's loss. Thus, the succeeding inferences comprising appellant's theory of liability were not viable. The common-sense assumption that stove fires do not start themselves is without probative value if there is only speculation that this blaze did originate in the trustees' stove. Appellant's theory is plausible—but jury verdicts are based on proof, not plausibility.

For these reasons, the jury's verdict for appellant cannot be reconciled with its answers to the interrogatories. The only finding consistent with those answers is a finding in favor of the trustees.[1] Therefore, I would

---

[1] The jury's confusion and uncertainty were reflected in this exchange between the jury foreman and the trial court, where the conflict between the jury's general verdict for appellant and its answers to the interrogatories were discussed:

"Mr. Watson: Let me see how I want to say this. I think the problem we're having mainly what you throwed on us on them interrogatory questions, and together with the verdict, the three verdicts you give us, how they're conflicted together. If we vote one way on the questions and another way on the verdict, it's not coming out right. So we're discussing it back and forth and trying to get to the right decision where it would be fair to each one.

"The Court: Okay. Now, you have the four interrogatories and you have three general

affirm the judgment of the court of appeals and enter judgment notwithstanding the verdict. For the foregoing reasons, I respectfully dissent.

LOCHER, J., concurs in the foregoing dissenting opinion.

---

verdict forms, and you have to fill out one of the general verdict forms. Have you arrived at a general verdict yet?

"Mr. Watson: We've got 5 and 3 on the verdict.

"The Court: And you haven't started on the interrogatories yet?

"Mr. Watson: We've got them settled.

"The Court: You Do?

"Mr. Watson: Right. It's conflicting with our verdict what it comes up with. We're afraid that we got one way in the verdict that's going to make us look like on the interrogatory questions—I don't think we quite understand."