DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Lucas County Court of Common Pleas. There, appellant, following the return of a jury verdict, was convicted and sentenced on counts of aggravated robbery, complicity, failure to comply with the signal of a police officer, and receiving stolen property. Because we conclude that appellant's convictions were supported by the evidence, we affirm.
On August 24, 1999, appellant, James McNeir, was indicted by the Lucas County Grand Jury on two counts of aggravated robbery with firearm specifications, in violation of R.C. 2811.01(A)(1) and R.C. 2941.145; one count of failure to comply with the signal of a police officer, in violation of R.C. 2921.331(B)and (C)(1); and one count of receiving stolen property, in violation of R.C. 2913.51. The indictment stemmed from the following facts which were presented during a two day jury trial.
Mike Powell, manager of a Montgomery Wards store in Toledo, Ohio, testified that at 7:00 a.m. on August 13, 1999, he observed two African-American males walking on the sidewalk outside the store. Powell was sitting at a desk in the business office area and thought the two men were store employees. When they entered the building, Powell saw the men pull black nylon stockings over their heads and put on latex gloves. Powell described one man as wearing a collared shirt and being shorter and stockier than the second man.
As Powell got up to run out of the office, the men approached him. The shorter man, holding a black revolver with a long barrel, told Powell not to look at him. The men then directed Powell to kneel against a wall. Powell testified that the taller man pulled a wad of speaker wire from his pocket and attempted to tie Powell's hands, but gave up because the wire was too tangled. The men then got Powell up and directed him to take them back to where the money was kept. Powell led them to the inner office area; he explained to them that the safe was broken and the only money in the store was some rolled coins which were there on the counter and in the cash drawers. The men then had Powell kneel down in a corner of the inner office. The shorter man held the gun on Powell while the other man began gathering the rolled coins. According to Powell, the shorter man became impatient and the men switched places with the taller man holding the gun to Powell's cheek.
Powell testified that another employee, Terry Love, then walked into the outer office area. Love was confronted by the robbers who told him to lie down on the floor. The stockier man then told Powell to also lie down. He lifted up Powell's coat and took Powell's wallet from his back pants pocket. The stockier man then took out the money and dropped the wallet on the floor beside Powell. The two robbers then left.
Powell quickly got up and went to look out the store windows. He testified that he saw the two men, still wearing the stocking masks, get into a green, late model, Oldsmobile. Powell was able to get the license number as the driver did a U-turn in the parking lot and sped away. Powell called "911" and gave a description of the car and number. Powell testified that the majority of the money taken from the store was found on the sidewalk outside the store. At trial, Powell noted that the state's exhibits of a black revolver, white latex gloves, black stockings, and rolled coins, looked like the ones involved in the robbery.
Terry Love then corroborated Powell's testimony that two African-American males with a gun had robbed the store. Love described one man as a little heavier and taller, and the other as slimmer.[1] He said that the men had stockings over their faces, wore red baseball caps and light colored latex gloves. Love stated that the gun was a dark metal revolver with a long barrel and a light colored handle. Love testified that the heavier man, who had the gun, ordered him to get down on his knees in one part of the office area. The men then walked into the adjacent office where the safe was kept and told both Love and Powell to lay down on the floor. While the two men were in different rooms, they could be watched from the doorway by the man with the gun, according to Love.
Love testified that, out of the corner of his eye, he could see that the heavier man held the gun while the slimmer man took the money. Love could not actually see into the safe area, but stated that he believed only the slim man collected the coins because the heavier man held the gun on Love and Powell. The heavier man then confiscated Powell's wallet, took money from it, and discarded it. Love stated that he never saw the slimmer man handle the gun or place the gun against Powell's cheek. Although the heavier man seemed to be in charge and held the gun, the two men appeared to be acting together, according to Love.
Love further testified that the men took off the stocking masks just before they exited the store, but he could not see their faces. After the men left, Love warned other workers in the back of the store; he did not see the two men after that, but did see loose change and rolled coins scattered in the parking lot. Love said that the state's exhibits of the rolled coins, the latex gloves, and the black stocking looked like the items taken or used during the robbery. Love also testified that he was certain that the gun offered as an exhibit looked identical to the gun that was used in the robbery, i.e., a dark metal revolver with a long barrel and a light colored handle.
Several Toledo Police officers testified regarding their subsequent pursuit of the green Oldsmobile. Officer Phillip Carroll stated that on the morning of the robbery he was patrolling the neighborhood near the mall. He received a radio dispatch regarding a robbery at the mall which involved two black males; the officer also received a description and license number of the suspects' vehicle. En route to the mall, Officer Carroll encountered the described vehicle which contained one black male — the driver. After noting that the license plate matched the previous dispatch information, Officer Carroll began to follow the vehicle, awaiting back-up. When a second police car pulled up alongside the suspects' vehicle, the driver, who was later identified as appellant, ran a red traffic light and fled at a high rate of speed. Officer Carroll then activated his lights and siren, and the two units began to chase the vehicle. The vehicle did not stop, despite the officer's signal to pull over.
After running another red light, appellant, traveling between sixty to seventy m.p.h. in a thirty-five m.p.h. construction zone, ultimately lost control and hit a curb, causing the vehicle to spiral through the air and crash into a building. Appellant then crawled out of the vehicle and began to run from the scene. Additional police officers who had arrived at the scene chased him across the street, over a guardrail, across a grassy field and over two fences. Officer Don Mitchell testified that he eventually apprehended appellant who stated, "You got me. You got me."
During the investigation of the crime scene, the following evidence was found inside the car: several rolls of coins, a great amount of loose change, a pair of latex rubber gloves, and a black nylon stocking. Police also found a fully loaded black .22 caliber revolver with a long barrel lying on the ground underneath the driver's door of the car. The officer who found the gun stated that he saw the handle of the revolver sticking out from beneath the vehicle. Loose coins and rolls of coins were also found on the ground in this area. Twenty-seven photos depicting the accident scene were then admitted at trial.
The car's owner testified that the vehicle in the photos, a 1996 green Oldsmobile Cutlass, was his and that he had reported it stolen on July 12, 1999. He further stated that the car had been in excellent condition, that he kept a set of keys wired underneath the left front of the vehicle, and that he had not given anyone permission to take the vehicle. The owner stated that police called to inform him they had recovered his stolen vehicle which was "totaled" as a result of the accident. The state then rested and appellant offered no evidence in defense. After deliberating, the jury found appellant guilty of all four counts and the two firearm specifications. For purposes of sentencing, appellant moved that the two counts of aggravated robbery be merged as allied offenses of similar import. The court denied appellant's motion and sentenced appellant to the following prison terms: nine years as to Count 1, aggravated robbery [R.C. 2911.01(A)(1)]; three years as to the firearm specification attached to Count 1 [R.C. 2941.145]; nine years as to Count 2, complicity in the commission of aggravated robbery [R.C.2923.03]; three years as to the firearm specification attached to Count 2; eighteen months as to Count 3, failure to comply with the signal of a police officer [R.C. 2921.331(B) and (C)(1)]; and twelve months as to Count 4, receiving stolen property, motor vehicle, [R.C. 2913.51].
The court merged the firearm specifications attached to Counts 1 and 2 into a single mandatory and consecutive three year term, pursuant to R.C. 292914(D)(1). The court also ordered the sentences to be served consecutively to one another for a total of twenty-three years and six months.
Appellant now appeals the convictions and sentences, setting forth the following five assignments of error:
"First Assignment of Error
 "Defendant-Appellant's Convictions Are Not Supported by Sufficient Evidence and Are Therefore A Denial of Due Process.
"Second Assignment of Error
 "Defendant's Convictions are Against the Manifest Weight of the Evidence.
"Third Assignment of Error
 "The Trial Court Erred When it Failed to Merge the Sentences for the Convictions of Aggravated Robbery Contained in Counts One and Two as they are Allied Offenses of Similar Import. Therefore, Defendant- Appellant's Sentence Violated Appellant's Constitutional Rights Against Double Jeopardy Guaranteed by Article I, Section 10 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.
"Fourth Assignment of Error
 "Defendant Appellant's Sentences are not Supported by the Record.
"Fifth Assignment of Error
 "Insofar as Any Error Complained of Was Not Adequately Preserved Below, Defendant- Appellant Was Denied The Effective Assistance of Counsel."
 I.
Appellant, in his first assignment of error, argues that the convictions were not supported by sufficient evidence.
"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins (1997), 78 Ohio St.3d 380,386. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine
 "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Evidence presented as to the elements of a crime may be direct or circumstantial. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Circumstantial evidence has the same probative value as direct evidence. Id. Inferences may be drawn from circumstantial evidence so long as one inference is not drawn wholly from another inference. State v. Jacks (1989), 63 Ohio App.3d 200, 206; State v.Miller (Mar. 19, 1999), Erie App. No. E-96-086, unreported, citing toMotorists Mut. Ins. Co. v. Hamilton Twp. Trustees (1986), 28 Ohio St.3d 13,16. Thus, inferences are permitted to prove essential elements of a crime. State v. Jordan (2000), 89 Ohio St.3d 488, 495.
Appellant was found guilty of four separate crimes: aggravated robbery with a firearm specification, complicity to commit aggravated robbery with a firearm specification, failure to obey the signal of a police officer, and receiving stolen property (motor vehicle).
R.C. 2911.01(A)(1)provides that:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a dangerous ordnance on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;* * *."
R.C. 2941.145 provides for an additional mandatory three year prison term if a defendant is found guilty of having a "firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
In this case, the manager, Mike Powell, testified that both robbers held the revolver on him at different times. Powell also stated that the slimmer, taller man held the gun to his cheek while the other man finished collecting the rolled coins.
At trial, it was noted that appellant was somewhat thin, rather than stocky. Powell also testified that both men fled in a green Oldsmobile for which he provided the license plate number. Within minutes, appellant was apprehended on a nearby street driving the vehicle matching that description and plate number. In addition, that car held a collection of items which were the same as those connected with the robbery: latex gloves, black stocking, and rolled coins. Testimony was presented that a revolver that looked identical to the one used in the robbery was also found on the ground beneath the car door, near more spilled coins.
Although appellant was not identified directly as one of the robbers, when considered as a whole, circumstantial evidence was presented from which the jury could reasonably infer that appellant was one of the men who used a gun to rob the Montgomery Ward store. Therefore, sufficient evidence was presented as to count one, aggravated robbery with a firearm specification.
R.C. 2923.03 states, in pertinent part, that
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
"(2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code; * * *."
As we previously noted, circumstantial evidence was presented that, although appellant may not have personally taken the money from Powell's wallet, he was acting in concert with the other robber to aid or abet in the use of a firearm in the commission of the theft. Therefore, sufficient evidence was presented as to all the essential elements of the crime of complicity to commit aggravated robbery and the accompanying firearm specification.
R.C. 2921.331(B)and (C)(1) provide that:
 "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.
 "(C) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer. * * * A violation of division (B) of this section is a misdemeanor of the first degree, except that a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds any one of the following by proof beyond a reasonable doubt:
 "(1) In committing the offense, the offender was fleeing immediately after the commission of a felony; * * *."
In this case, evidence was presented that appellant was driving the green Oldsmobile that did not, in fact, stop or pull over after a police officer turned on his lights and siren. As previously noted, sufficient evidence was presented that appellant had just been involved in the commission of aggravated robbery, a felony. Therefore, sufficient evidence was presented as to the charge of failure to comply with the signal of a police officer.
Finally, R.C. 2913.51 states that
 "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
Ohio courts have recognized that flight is evidence of consciousness of guilt and of guilt itself. State v. Williams (1997), 79 Ohio St.3d 1,11; State v. Taylor (1997), 78 Ohio St.3d 15, 27. In addition, erratic driving and flight from police officers is circumstantial evidence that the driver was aware that the vehicle he was in was stolen. See In reHouston (Nov. 25, 1998), Cuyahoga App. No. 73950, unreported; State v.Maddox, (June 4, 1998), Cuyahoga App. No. 72765, unreported.
In the present case, it is undisputed that the green Oldsmobile driven by appellant was stolen. When the officers followed appellant, he began to run red lights and increased his speed. When officers then activated their sirens and overhead lights, appellant did not pull over, but continued to speed and drive erratically, eventually losing control of the vehicle. Even after the car crashed, appellant did not stop, but crawled out of the car and attempted to flee from police. When he was caught, appellant stated, "You got me. You got me." In our view, this evidence is sufficient circumstantial evidence that appellant was aware that the vehicle he was driving was stolen.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, contends that the convictions were against the manifest weight of the evidence.
A reviewing court on this issue is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
In this case, appellant is essentially arguing that the evidence presented was not credible or was conflicting, and thus, does not support the convictions. However, we find nothing in the record to be so conflicting or irreconcilable so as to make any of the witnesses' testimony incredible. Even excluding evidence of the gun found at the scene of the accident, circumstantial evidence was presented that minutes after the robbery occurred, appellant was observed driving a vehicle which was positively identified as the one the robbers used to flee from the store. Appellant continued to flee from police, even after the vehicle crashed. The vehicle contained evidence that provided a direct link to the robbery. Consequently, we conclude that credible evidence was presented from which the jury could have inferred that appellant was one of the men who utilized a firearm to commit aggravated robbery of both the Montgomery Ward store and the manager. Therefore, having thoroughly examined the record and weighed the evidence, we cannot say that the evidence weighs heavily against conviction or that the jury clearly lost its way to create such a miscarriage of justice so as to require reversal of the conviction.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in his third assignment of error, argues that the two convictions for aggravated robbery should have been merged. We disagree.
R.C. 2941.25(B) provides:
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
Two statutory offenses constitute allied offenses of similar import if the elements of the respective offenses correspond to such a degree that the commission of one offense will result in the commission of the other offense. State v. Fields (1994), 97 Ohio App.3d 337, 345. To determine whether multiple crimes are allied offenses of similar import, a court must apply a two part test:
 "Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.' Jones, 78 Ohio St.3d at 14, * * *. And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B); Jones, 78 Ohio St.3d at 14, 676 * * * (a defendant may be convicted of allied offenses of similar import if the defendant's conduct reveals that the crimes were committed separately or with separate animus)." State v. Rance (1999), 85 Ohio St.3d 632, 636.
Pursuant to the Rance test set forth above, we must first compare the statutory elements of the two offenses. Upon doing so, we conclude that the elements of proof for the crimes of aggravated robbery and complicity to commit aggravated robbery may correspond to such a degree that the commission of the one offense will result in the commission of the other.
Under the second step, we must now determine whether the crimes were committed separately or if there was a separate animus for each crime. In this case, appellant was convicted of aggravated robbery in connection with the taking of money by use of a firearm from the Montgomery Ward store. However, the complicity conviction was based on appellant's aiding and abetting the robbing of the manager by the other unknown robber. In our view, each crime was committed with a separate animus because the crimes involved separate and distinct victims. In other words, robbery of the store did not necessarily include robbery of the manager. Therefore, we conclude that, in this case, appellant's convictions for aggravated robbery and complicity to commit aggravated robbery were not allied offenses of similar import.
Accordingly, appellant's third assignment of error is not well-taken.
 IV.
Appellant, in his fourth assignment of error, claims that the sentences imposed by the trial court are not supported by the record.
Appellant was convicted of two first degree felonies and two fourth degree felonies. R.C. 2929.14(A)(1) states that for a felony of the first degree, the prison term shall be three to ten years. R.C. 2941.145
requires a mandatory three year prison term for an offense committed while the offender had a firearm on or about his person or under his control, and used the firearm to facilitate the offense. R.C.2929.14(A)(4) provides that for a felony of the fourth degree, a court may impose a prison term of six to eighteen months.
In this case, appellant was sentenced to nine years for each of the two first degree felonies. Since these sentences were below the maximum allowed for the offenses, the trial court was within the statutory guidelines for sentencing. Likewise, the court merged the two firearm specifications, resulting in one mandatory three year term for those offenses, which must be served first and consecutively to the sentences for the underlying felonies. See R.C. 2929, 14 (E)(1). Thus, the court did not abuse its discretion as to the sentences imposed for the first degree felonies.
A term of incarceration for a fourth or fifth degree felony may be imposed pursuant to R.C. 2929.13(B). If the court finds that at least one factor listed in R.C. 2929.13(B)(1) is applicable, the court then must consider the factors set forth in R.C. 2929.11 and 2929.12, regarding the overriding purposes of felony sentencing and seriousness and likelihood of recidivism. R.C. 2929.13(B)(2)(a)and (b); see State v.Sims (Dec. 9, 1998), Summit App. No. 19018, unreported. See also R.C.2929.13(C). After considering these and all other relevant factors, if the court finds that (1) a prison term is consistent with the purposes of felony sentencing, and (2) the offender is not amenable to community control, then the court is required to impose a prison term. R.C.2929.13(B)(2)(a).
The court sentenced appellant to eighteen months for the fourth degree felony, failure to comply with the signal of a police officer, and twelve months for the fourth degree felony, receiving stolen property. In conjunction with the two fourth degree felony offenses, the court specifically found the following, "pursuant to R.C. 2929.13(B): 1) attempt or threat with a weapon; 2) previous prison term served; and 3) the defendant previously was subject to community control sanction, and the defendant committed another offense while under the sanction."
In imposing a greater prison term, the court also found that appellant is not amenable to community control, that prison is consistent with the purposes of R.C. 2929.11, that the shortest prison term will demean the seriousness of the offense, and will not adequately protect the public. The court then found that appellant "has committed the worst form of the offense; poses the greatest likelihood of recidivism" and imposed the maximum sentence for the failure to comply offense. Upon review, we conclude that the record shows that the trial court properly considered all the required factors in imposing the sentences.
Finally, a trial court may require an offender to serve multiple prison terms consecutively, if the court finds that it is necessary to
 "protect the public from future crime or punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"* * *
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(3).
In this case, the court found that the terms imposed were "necessary to fulfill the purposes of R.C. 2929.11, and not disproportionate to the seriousness of the offender's conduct or the danger the offender poses and * * * the harm caused was great or unusual." Appellant's conviction stemmed from a series of dangerous actions that involved robbing a store and its manager while using a firearm, fleeing in a stolen vehicle, speeding and driving recklessly, running traffic lights, fleeing from police and crashing into a building. Therefore, based upon the actual damages and potential for harm from appellant's actions, we cannot say that the trial court's findings were unsupported by the record.
Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
Appellant, in his fifth assignment of error, argues that if any errors presented were not adequately preserved for review, that we should consider a claim of ineffective assistance of counsel.
In order to prove ineffective assistance of counsel, an appellant must show 1) that defense counsel's representation fell below an objective standard of reasonableness, and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citingStrickland v. Washington (1984), 466 U.S. 668, 694. Appellant's assigned errors were all adequately preserved and addressed by this court. Appellant has failed to point out any additional errors by trial counsel. Therefore, appellant has not established the first prong of the test for a claim of ineffective assistance of counsel.
Accordingly, appellant's fifth assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Peter M. Handwork, J., James R. Sherck, J. Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] At one point, during cross-examination, Love stated that the slimmer person was also about five-eleven and weighed one hundred sixty-five pounds. Love said that the heavier person weighed about two hundred twenty pounds and was a little taller.