OPINION
Plaintiff-appellant, Fred House, dba House's Towing, appeals a Butler County Court of Common Pleas decision granting summary judgment in favor of defendant-appellee, Russell Reed Son, Inc. ("Reed Son"). The trial court's decision is affirmed.
Appellant ordered and received a 1997 GMC truck chassis and truck that he wanted to convert to a tow truck. In April 1997, appellant entered into an agreement to have Reed Son convert his truck into a tow truck. First, appellant delivered the truck to John Dsuban, dba Dsuban Spring Service,[1] for preliminary work on the springs. After this was finished, the truck was delivered to Reed Son for the conversion work. Reed Son subcontracted some of this work to Wilbanks Wrecker Mounting 
Repair ("Wilbanks") and T.Q. Auto Works.[2] Appellant was not aware that Reed Son would be subcontracting some of the conversion work.
Although appellant was told that the conversion would be completed in six to eight weeks, the conversion took almost three months. When appellant went to Reed Son to pick up his truck, he discovered that a toolbox had not been ordered and that one of the side mirrors was not attached. Although the toolbox was not checked on the quote sheet, Reed 
Son agreed to install a toolbox and appellant left without the truck. Reed Son delivered the truck to appellant on or about September 16, 1997. At the time of delivery, appellant examined the rear of his truck to ensure that the conversion was complete and the wrecker was functional. Then appellant paid the balance due for the conversion work.
Later that day, appellant noticed a dent in the passenger-side-mirror and telephoned Reed Son, which offered to pay for a replacement mirror. That night, appellant's son, Jim House, drove the truck home and reported that the rear-end of the truck was making a noise. Two days later, appellant drove the truck to Fiehrer Motors, the dealership from which the truck had originally been purchased, for repairs. Because this work was covered by warranty, House did not have to pay for these repairs. Appellant's truck was returned to him about three weeks later, in mid-October.
After the truck was returned, Jim House drove the truck and told appellant that the steering was not properly aligned. Two days later, appellant noticed the following: a hinge under the hood and the fender had red paint on them; a rear stabilizer bar had a sticker on it; there was a dent in the driver's-side door; the front bumper did not line up; and the right frame horn had a split in it. Appellant took the truck to a body shop and was told that the front end had been repainted. Later, appellant took the truck to three additional body shops and was told that the truck had been "wrecked." However, appellant continued to use the truck.
Appellant filed a complaint against Reed Son and Dsuban Spring Service alleging negligence and breach of a bailment contract. Appellant also included an allegation of negligent misrepresentation against Reed 
Son. Dsuban Spring Service filed a cross-claim against Reed Son, requesting contribution and indemnification in the event of liability. Reed Son filed third-party complaints against Wilbanks and T.Q. Auto Works.
Reed Son moved the trial court for summary judgment. The trial court subsequently granted summary judgment in favor of Reed Son. Appellant appealed, raising two assignments of error for our review. Both of appellant's assignments of error allege that the trial court erred by granting summary judgment in favor of Reed Son.
Pursuant to Civ.R. 56(C), a summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment de novo. Jones v. ShellyCo. (1995), 106 Ohio App.3d 440, 445. Therefore, we will review the facts presented to determine whether appellant has established a genuine issue as to whether Reed Son breached a bailment contract, made a negligent misrepresentation, or negligently damaged appellant's truck.
A bailment is created "where one person delivers personal property to another for a specific purpose." Vandeventer v. Vandeventer (1999),132 Ohio App.3d 762, 767. Only possession is transferred, and ownership remains in the bailor. Id. at 767-68. In order to establish a cause of action in contract under a bailment theory, the bailor must prove "(1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment." Id. at 768, quoting Davidv. Lose (1966), 7 Ohio St.2d 97, paragraph one of the syllabus.
In this case, there is no dispute that a bailment contract was created between Reed Son (bailee) and appellant (bailor). Nor is there any dispute that appellant's truck was delivered to Reed Son. On appeal, appellant challenges the trial court's determination that appellant had not demonstrated that Reed Son had failed to redeliver the truck undamaged.
Appellant argues that from the evidence presented a fact-finder could reasonably infer that Reed Son or one of its independent contractors damaged appellant's truck while working on the conversion project.[3]
See Motorists Mut. Ins. v. Hamilton Twp. (1986), 28 Ohio St.3d 13, 16. Appellant asserts that after the conversion work by Reed Son was completed, he noticed that the fender had been replaced and repainted. Appellant reasons that based upon these observations a fact-finder could reasonably infer that the truck had been damaged and then repainted. Appellant asserts that the damage occurred between the time that his truck was left at Dsuban Spring Service and was returned to appellant by Reed 
Son. Appellant also insists that Reed Son switched a damaged left side-mirror with a right side-mirror to minimize detection of damage to the left side-door.
In support of the motion for summary judgment, John Reed, the president of Reed Son, submitted an affidavit stating that appellant's truck was not wrecked or damaged in any way while in the company's custody and control. The affidavit also states that no one at his company performed any repair work on the truck for the purpose of concealing any damage. Moreover, the affidavit states that the conversion work performed involved adding equipment to the rear of the cab of appellant's truck and that no one at Reed Son had any reason to perform any work on the front fenders or hood of the truck. Reed Son's expert witness, Stephen Overbeck, thoroughly inspected appellant's truck in April 2000. When Overbeck noted damage to the front push-bumper during his inspection, Jim House said that he had caused that damage last winter when he slid into a tree. Overbeck concluded that in his professional opinion, appellant's truck "suffered substantial body damage in the hands of its present owner and it shows no evidence of pre-delivery damage[,]" and that "other than the paint color difference of the left fender the vehicle was not in its present [damaged] condition at the time of delivery from Russell Reed 
Son."
Appellant's deposition testimony demonstrates that he did not know when the damage to his vehicle occurred:
 A. And you're testifying that these repairs were done to conceal some damage that was — that occurred to your wrecker after you picked it up from Fiehrer Motors initially when you first bought it and when you received it back from Reed Son; is that correct?
 A. Well, I didn't spot the damage when it came back from Reed Son. I spotted the damage after I got it back from Fiehrer's, the rear-end being —
 As noted above, two days after Reed Son returned the truck to appellant, he drove the truck to Fiehrer Motors for further repairs, where it remained for about three weeks. Appellant only noticed the damage to his truck days after the truck was returned from Fiehrer Motors.
Upon construing the evidence presented in a light most favorable to appellant, we agree with the trial court's conclusion that appellant failed to present any evidence that appellant's truck was damaged when it was delivered to appellant by Reed Son. Therefore, summary judgment was properly awarded to Reed Son on the breach of bailment contract claim.
Appellant also alleges that Reed Son committed negligent misrepresentation during this business transaction. The elements of negligent misrepresentation are as follows: "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Croucher v.Steele (1999), Clinton App. No. CA98-05-015, unreported, at 4, quotingDelman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4.
Appellant asserts that Reed Son committed negligent misrepresentation by damaging appellant's truck and making repairs to conceal such damage. However, we find that appellant has not presented specific facts showing a genuine issue as to whether Reed Son damaged appellant's truck (or knew about damage to the truck caused by a subcontractor) and then concealed the damage through repairs or other actions or statements. Therefore, it was appropriate to award summary judgment in favor of Reed Son with regard to the claim of negligent misrepresentation.
The complaint also alleges that Reed Son negligently damaged appellant's truck. In order to sustain an action founded upon negligence, a plaintiff must show (1) that the defendant had a duty, recognized by law, requiring him or her to conform his or her conduct to a certain standard for the plaintiff's protection; (2) that the defendant failed to conform his conduct to that standard; and (3) that the defendant's conduct proximately caused the plaintiff to suffer a loss or injury.Cassano v. Antenan-Stewart, Inc. (1993), 87 Ohio App.3d 7, 9, certiorari denied (1993), 67 Ohio St.3d 1423, citing Brauning v. Cincinnati Gas Elec. Co. (1989), 54 Ohio App.3d 38, 40. See, also, Fed. Steel WireCorp. v. Ruhlin Constr. (1989), 45 Ohio St.3d 171, 173, citing Menifeev. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77.
"Negligence must be shown from the facts; it may not be presumed or inferred from guess or speculation." Cupp v. Zoz (Dec. 27, 1994), Butler App. No. CA94-06-122, unreported, at 2, certiorari denied (1995),72 Ohio St.3d 1521, citing Boles v. Montgomery Ward Co. (1950),153 Ohio St. 381, 388. Reviewing the evidence, we find that the assertion that Reed Son was negligent in some manner and that this negligence caused damage to appellant's truck is supported only by appellant's speculation.
Based upon all of the foregoing, we find that the trial court properly determined that summary judgment should be awarded in favor of Reed 
Son. The assignments of error are overruled.
YOUNG, P.J., and POWELL, J., concur.
[1] Dsuban Spring Service is also a defendant in this case but was not a party to the summary judgment decision under review in this appeal.
[2] Wilbanks and T.Q. Auto Works are third — party defendants in this case but are not parties to the summary judgment decision under review in this appeal.
[3] This court has previously held that an automobile dealership can be held liable for breach of bailment contract where it delivered possession of vehicle to a body shop for repair without the vehicle owner's consent and the vehicle was involved in an accident while being driven to the body shop. West Am. Ins. Co. v. Stith (1990), 66 Ohio App.3d 605,609.